UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| EARL M. WHEBY, JR., Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SUNCOKE ENERGY, INC., MICHAEL G. RIPPEY, JOHN W. ROWE, ALVIN BLEDSOE, PETER B. HAMILTON, SUSAN R. LANDAHL, ROBERT A. PEISER, JAMES E. SWEETNAM, and SUNCOKE ENERGY PARTNERS, L.P.,<br><br>　　　　　　Defendants. | Case No. _____<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.　　This action stems from a proposed transaction announced on February 5, 2019 (the "Proposed Transaction"), pursuant to which SunCoke Energy, Inc. ("SXC" or the "Company") will acquire all outstanding common units of SunCoke Energy Partners, L.P. ("SXCP") not already owned by SXC in a stock-for-unit merger transaction.

2.　　On February 4, 2019, SXC's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, SXCP unaffiliated common unitholders will receive 1.40 SXC common shares for each SXCP common unit. Completion of the Proposed Transaction is subject to the approval by holders of a majority of the outstanding

SXC common shares and SXCP common units.[1]

   3. On April 30, 2019, SXC filed a registration statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction, which recommends that SXC's shareholders vote to approve the issuance of SXC common stock pursuant to the terms of the Merger Agreement in connection with the Proposed Transaction.

   4. As set forth herein, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

   5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

   6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

   7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

---

[1] SXC indirectly owns a sufficient percentage of the SXCP common units to approve the Proposed Transaction on behalf of the holders of SXCP common units.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, a shareholder of SXC.

9. Defendant SXC is a Delaware corporation with its principal offices located at 1011 Warrenville Road, Suite 600, Lisle, IL 60532. SXC's common stock is traded on the NYSE under the ticker symbol "SXC." SXC is a party to the Merger Agreement.

10. Defendant Michael G. Rippey ("Rippey") is President, Chief Executive Officer ("CEO"), and a director of the Company. Rippey is also Chairman of the Board, President, and CEO of SunCoke Energy Partners GP LLC ("General Partner"), which manages SXCP.

11. Defendant John W. Rowe is a director of the Company.

12. Defendant Alvin Bledsoe ("Bledsoe") is a director of the Company. Bledsoe is also a director of General Partner.

13. Defendant Peter B. Hamilton is a director of the Company.

14. Defendant Susan R. Landahl is a director of the Company.

15. Defendant Robert A. Peiser is a director of the Company.

16. Defendant James E. Sweetnam is a director of the Company.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18. Defendant SXCP is a Delaware limited partnership and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action on behalf of himself and the other public shareholders of the SXC (the "Class"). Excluded from the Class are defendants herein and any

3

person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20. This action is properly maintainable as a class action.

21. The Class is so numerous that joinder of all members is impracticable. As of February 4, 2019, SXC had approximately 64,756,093 shares outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

***SXC***

26. SXC is a Delaware corporation that was formed in 2010 and became a publicly-traded company in 2011.

27. The Company is the largest independent producer of high-quality coke in the Americas, as measured by tons of coke produced each year and, through its predecessor entities, has approximately fifty-five years of coke production experience.

28. Coke is a principal raw material in the blast furnace steelmaking process and is produced by heating metallurgical coal in a refractory oven, which releases certain volatile components from the coal, thus transforming the coal into coke.

29. SXC's cokemaking ovens combust the coal's volatile components liberated during the cokemaking process, where the resulting heat can be used to create steam or electricity for sale.

30. The Company also provides handling and/or mixing services to steel, coke (including some of SXC's domestic cokemaking facilities), electric utility, coal producing, and other manufacturing based customers.

31. SXC owns General Partner, which owns a 2.0% general partner interest and incentive distribution rights ("IDRs") in SXCP, and owns a 60.4% limited partner interest in SXCP. The remaining 37.6% interest in SXCP is held by holders of SXCP public units.

***SXCP***

32. SXCP is a Delaware limited partnership formed by SXC in July 2012 to own and operate certain coke production facilities and logistics terminals.

33. SXCP also provides coal handling and/or mixing services at its logistics terminals.

34. SXCP licenses its advanced heat recovery cokemaking process from SXC.

35. On January 24, 2013, SXCP completed the initial public offering of its common units representing limited partner interests in SXCP.

36. SXCP operates and owns a 98% interest in three domestic cokemaking facilities and operates and owns four domestic logistics and coal handling terminals.

***The Proposed Transaction***

37. On February 4, 2019, the Board caused SXC to enter into the Merger Agreement.

38. According to the press release announcing the Proposed Transaction:

SunCoke Energy, Inc. (NYSE: SXC) and SunCoke Energy Partners, L.P. (NYSE: SXCP) today announced that they have entered into a definitive agreement whereby SXC will acquire all outstanding common units of SXCP not already owned by SXC in a stock-for-unit merger transaction (the "Simplification Transaction"). The Simplification Transaction is expected to close late in the second quarter or early in the third quarter of 2019, subject to customary closing conditions. Pursuant to the terms of the merger agreement, SXCP unaffiliated common unitholders will receive 1.40 SXC common shares for each SXCP common unit. The SXCP unit price implied by the exchange ratio represents a 9.3% premium to SXCP's closing price on February 4, 2019 and a 12.7% premium based on SXC's and SXCP's 30-day volume weighted average prices ending February 4, 2019. . . .

On behalf of SXCP, the terms of the Simplification Transaction were negotiated, reviewed and approved by the conflicts committee of the board of directors of SXCP's general partner, which committee consisted solely of independent directors. The conflicts committee also recommended that the board of directors of SXCP's general partner approve the transaction. The transaction was approved by the board of directors of SXCP's general partner and the board of directors of SXC. . . .

Pursuant to the terms of the merger agreement, SXC will acquire all of the outstanding SXCP common units that it does not already own. SXCP common unitholders will be entitled to receive 1.40 shares of SXC per SXCP unit. SXCP anticipates that the Simplification Transaction will not close prior to the record date for the distribution relating to the first quarter of 2019. In addition, SXCP common unitholders will receive a prorated distribution per unit, payable in SXC common shares and based upon a quarterly distribution of $0.40 per unit, for the period beginning with the first day of the most recent full calendar quarter with respect to which an SXCP unitholder distribution record date has not occurred (or if there is no such full calendar quarter, then beginning with the first day of the partial calendar quarter in which the closing occurs) and ending on the day prior to the close of the merger, as provided in the merger agreement.

Following completion of the Simplification Transaction, SXCP will become a wholly-owned subsidiary of SXC, SXCP's common units will cease to be publicly traded and SXCP's incentive distribution rights will be eliminated. Additionally, SXCP's 7.50% Senior Notes due 2025 will remain outstanding. Completion of the merger is subject to customary closing conditions, including the approval by holders of a majority of the outstanding SXC common shares and SXCP common units, as well as customary regulatory approvals. SXC indirectly owns a sufficient percentage of the SXCP common units to approve the transaction on behalf of the holders of SXCP common units.

*The Registration Statement Omits Material Information*

39. On April 30, 2019, SXC filed the Registration Statement with the SEC in connection with the Proposed Transaction, which recommends that SXC's shareholders vote to approve the issuance of SXC common stock pursuant to the terms of the Merger Agreement in connection with the Proposed Transaction. The special meeting of SXC stockholders is scheduled for June 27, 2019.

40. As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

41. The Registration Statement omits material information regarding: (i) SXC's and SXCP's financial projections; (ii) the analyses performed by SXC's financial advisor in connection with the Proposed Transaction, Evercore Group L.L.C. ("Evercore"); and (iii) the analyses performed by SXCP's financial advisor in connection with the Proposed Transaction, Citigroup Global Markets Inc. ("Citi").

42. With respect to SXC's financial projections, the Registration Statement fails to disclose: (i) all line items used to calculate (a) Standalone SunCoke Adjusted EBITDA and (b) Cash Available for Dividends - Adjusted; (ii) a reconciliation of all non-GAAP to GAAP metrics; (iii) the projections for SXC's directly-held assets; and (iv) projected cash flow.

43. With respect to SXCP's financial projections, the Registration Statement fails to disclose: (i) all line items used to calculate (a) Adjusted EBITDA attributable to SXCP and (b) Distributable Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

44. The Registration Statement fails to disclose the projected cost savings and U.S. federal income tax synergies to result from the Proposed Transaction.

45. With respect to Evercore's Discounted Cash Flow Analysis of SXCP, the Registration Statement fails to disclose: (i) the cash flows to be received by SXCP; (ii) the terminal value of SXCP; (iii) the individual inputs and assumptions underlying the range of discount rates of 8.0% to 9.5% and the range of perpetuity growth rates of 0.0% to 2.0%; (iv) Evercore's basis for applying a range of EBITDA exit multiples of 7.5x to 9.5x; and (v) the value of the projected cash tax benefit resulting from remedial income allocations to SXC (the "Remedial Allocations").

46. With respect to Evercore's Precedent M&A Transaction Analysis of SXCP, the Registration Statement fails to disclose the individual multiples and metrics for the transactions observed by Evercore in the analysis.

47. With respect to Evercore's Peer Group Trading Analysis of SXCP, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by Evercore in the analysis.

48. With respect to Evercore's Discounted Cash Flow Analysis of SXC, the Registration Statement fails to disclose: (i) the projections for SXC's directly-held assets; (ii) the terminal values; (iii) the individual inputs and assumptions underlying the range of discount rates of 11.0% to 13.0% and the range of perpetuity growth rates of 0.0% to 2.0%; (iv) Evercore's basis for applying a range of EBITDA exit multiples of 5.5x to 7.5x; (v) SXC's net cash; (vi) SXC's liability for pneumoconiosis benefits; and (vii) the value of the projected cash tax expense resulting

from Remedial Allocations.

49.     With respect to Evercore's Precedent M&A Transaction Analysis of SXC, the Registration Statement fails to disclose the individual multiples and metrics for the transactions observed by Evercore in the analysis.

50.     With respect to Evercore's Peer Group Trading Analysis of SXC, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by Evercore in the analysis.

51.     With respect to Citi's Selected Public Companies Analysis of SXCP, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by Citi in the analysis.

52.     With respect to Citi's Selected Public Companies Analysis of SXC, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by Citi in the analysis.

53.     With respect to Citi's Selected Precedent Transactions Analysis, the Registration Statement fails to disclose the individual multiples and metrics for the transactions observed by Citi in the analysis.

54.     With respect to Citi's Discounted Cash Flow Analysis of SXCP, the Registration Statement fails to disclose: (i) the unlevered free cash flows that SXCP was forecasted to generate during the fiscal years ending December 31, 2019 through December 31, 2023 and all underlying line items; (ii) the implied terminal values for SXCP; (iii) Citi's basis for applying a selected range of terminal adjusted EBITDA multiples of 5.7x to 7.0x; and (iv) the individual inputs and assumptions underlying the range of discount rates of 8.3% to 9.8%.

55. With respect to Citi's Discounted Cash Flow Analysis of SXC, the Registration Statement fails to disclose: (i) the unlevered free cash flows associated with SXC's asset EBITDA during the fiscal years ending December 31, 2019 through December 31, 2023 and all underlying line items; (ii) the terminal values for SXC's asset EBITDA; (iii) Citi's basis for applying a selected range of terminal adjusted EBITDA multiples of 6.2x to 7.6x; (iv) SXC's estimated taxes and tax attributes during the fiscal years ending December 31, 2019 through December 31, 2023; (v) the terminal value for SXC's taxes; and (vi) the individual inputs and assumptions underlying the discount rates used by Citi in the analysis.

56. With respect to Citi's Has/Gets analysis, the Registration Statement fails to disclose: (i) the potential cost savings to result from the Proposed Transaction; and (ii) the individual inputs and assumptions underlying the range of discount rates of 8.3% to 9.8%.

57. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by a company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

58. Additionally, the Registration Statement omits material information regarding Evercore's and Citi's engagements.

59. The Registration Statement fails to disclose the timing and nature of the past services Evercore and its affiliates provided to SXC, as well as the amount of compensation received by Evercore for such services.

60. While the Registration Statement discloses that, during the two-year period preceding its opinion, Citi received aggregate fees of approximately $1.5 million from both SXCP and SXC, the Registration Statement fails to disclose what amount is attributable to the past services provided to SXC and what amount is attributable to the past services provided to SXCP.

61. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

62. The omission of the above-referenced material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Merger; (ii) Recommendation of the SXCP Conflicts Committee and the SXCP Board and Their Reasons for the Merger; (iii) Unaudited Financial Projections of SunCoke and SXCP; (iv) Opinion of SunCoke's Financial Advisor; and (v) Opinion of the SXCP Conflicts Committee's Financial Advisor.

63. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to SXC's shareholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and SXC**

64. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. SXC is liable as the issuer of these statements.

11

66. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

67. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

68. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable shareholder will consider them important in deciding how to vote regarding the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to shareholders.

69. The Registration Statement is an essential link in causing plaintiff and SXC's shareholders to vote to approve the issuance of SXC common stock pursuant to the terms of the Merger Agreement in connection with the Proposed Transaction.

70. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

71. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and SXCP

72. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

73. The Individual Defendants and SXCP acted as controlling persons of SXC within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions and participation in and/or awareness of SXC's operations and/or intimate knowledge of the false

statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of SXC, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

74. Each of the Individual Defendants and SXCP was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

75. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of SXC, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

76. By virtue of the foregoing, the Individual Defendants and SXCP violated Section 20(a) of the 1934 Act.

77. As set forth above, the Individual Defendants and SXCP had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.  Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: May 10, 2019

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

*Attorneys for Plaintiff*